**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| AUREL MICH | * | |
| (*a/k/a Mich Aurel*) | | |
| Plaintiff | * | |
| | | |
| v | * | Civil Action No. JKB-14-1473 |
| | | |
| LT. M. YACENECH,  et al. | * | |
| | | |
| Defendants | * | |
| | *** | |

**MEMORANDUM**

Pending in the above-entitled civil rights action is defendants' motion to dismiss or for summary judgment.  ECF 16.  Plaintiff opposes the motion with a cross-motion for summary judgment (ECF 18) and a motion for temporary restraining order (ECF 19).[1]  The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, defendants' motion, construed as a motion for summary judgment, shall be granted and judgment entered in their favor.

**Background**

Plaintiff, an inmate at North Branch Correctional Institution (NBCI), alleges that he and the Jewish community at NBCI were denied kosher meals.  He states that defendants stopped providing kosher meals on November 1, 2013.  He provides the menu for the three meals included on the kosher diet and claims that failure to provide it is discriminatory and violates his First Amendment right to freely practice his religion.  ECF 1 at p. 3.  He seeks monetary damages to be awarded to all Jewish prisoners subjected "to this arbitrary policy."  *Id.*

---

[1]  Plaintiff's motion for temporary restraining order was filed in all of his pending civil actions in this court.  *See* ECF 19 at pp. 1 – 2 (indicating the motion was filed in Civil Actions ELH-13-3721, ELH-14-374, and ELH-14-2813).  In it he alleges he is being harassed because prison official will not send his mail to friends and family overseas and he is being denied medical care.  Those claims are unrelated to the matter asserted in the instant case and the motion with respect to those claims will be denied without prejudice.  Plaintiff also asserts in the motion he is being denied kosher food.  ECF 19.  Because defendants are entitled to judgment in their favor, the motion with respect to the kosher diet will be denied with prejudice.

In an amended complaint, which was filed by plaintiff but does not bear his signature, it is further alleged that the kosher diet provided at NBCI is too high in soy.  Plaintiff claims he is suffering "irreparable, actual harm by being forced to continue to eat food that has too much soy in it."  ECF 15 at p. 2.  He asserts that the soy contained in the food has "ranged from acute allergic reactions and heart problems to gastrointestinal distress and dysfunction thyroid (sic)." *Id*.  Plaintiff further claims that soy causes damage to the kidneys and other organs over an extended period of time and the Jewish inmates at NBCI continue to be served "excessive amounts of soy" after dietary staff was made aware of the adverse effects.  *Id*. at p. 3.

Plaintiff further alleges that the vegetables served to Jewish inmates "come straight out of a can" and are not "heated to the temperature stated [by] the FDA for safe consumption."  *Id*.  He claims the vegetables are also not washed in water.  *Id*.  Plaintiff adds that "our concerns are genuine" and that religious beliefs dictate adherence to a kosher diet.  *Id*. at p. 4.

Defendants assert that on December 24, 2013, Plaintiff filed an Administrative Remedy Procedure request (ARP) asserting that the bagged breakfasts being provided were not kosher. ECF 16 at Ex. 1, p. 1.  The ARP was dismissed after the complaint was investigated and it was determined that the bagged breakfasts contained kosher items and were prepared in the kosher area of the NBCI kitchen. *Id*.  Plaintiff filed an additional six ARPs between December of 2013 through August of 2014, claiming he was not being provided with a kosher diet.  *Id*. at pp. 5 – 21.  An additional 12 ARPs filed by Plaintiff concerning the contents of the bagged breakfast were dismissed as repetitive.  *Id*. at Ex. 2.

Defendants claim that a religious dietary program is maintained at NBCI which complies with the minimum dietary requirements of the Jewish orthodoxy.  ECF 16 at Ex. 4.  Among the requirements observed are the separation of food items and utensils for meal preparation,

washing, and storage. *Id*. at pp. 2 – 4.  Food service employees and inmates assigned to work in the kitchen are required to go through training for kosher diet procedures.  *Id*. at p. 2.

## Standard of Review

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Rule 56(e)).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002).  The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Exhaustion of Administrative Remedies**

Defendants have raised the affirmative defense that plaintiff has failed to properly exhaust administrative remedies with respect to the claims asserted. ECF 16-1 at p. 7. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. It is of no consequence that plaintiff is aggrieved by a single occurrence, as opposed to a general conditions-of-confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim that has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007).

Administrative remedies must, however, be available to the prisoner and this court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). The Fourth Circuit has addressed the meaning of "available" remedies:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*,

> 548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

*Moore v. Bennette*, 517 F. 3d 717, 725 (4th Cir. 2008).

Thus, plaintiff's claims must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003). The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth*, 532 U.S. at 735 (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In order to exhaust administrative remedies as established in the Maryland Division of Correction, a prisoner must first file an ARP with the warden of the prison. If the request is denied, an appeal to the Commissioner of Correction must be filed within ten days of the warden's response. If the Commissioner denies the appeal, a further appeal may be filed within

30 days with the Inmate Grievance Office (IGO).  *See* Md. Code Ann., Corr. Serv. §§10-206 and 10-210.

Defendants provide a declaration under oath from the executive director of the IGO indicating that two grievances were received from plaintiff concerning the matters asserted in this case and both were dismissed for failure to comply with the interim appellate review with the Commissioner of Correction.  ECF 16 at Ex. 3.  In his cross-motion for summary judgment plaintiff asserts that his attempts to properly appeal the ARPs denied by the warden were unsuccessful because they are being destroyed by Lt. Pennington and mail sent through indigent mail[2] is destroyed by the mail room.  ECF 18 at p. 2.

Plaintiff's bald assertion is insufficient to rebut the affirmative defense raised.  Plaintiff fails to explain when he attempted to appeal an ARP to the Commissioner of Correction or what he alleged in that appeal.  Additionally, plaintiff does not address the fact that his grievances were dismissed for failure to properly exhaust administrative remedies and he sought no further review of the decision in the appropriate state Circuit Court.  To the extent plaintiff's legal mail was improperly confiscated or was not delivered properly, that assertion could have been raised as grounds to reverse the dismissal of the grievances, but was not.  Having failed to properly exhaust administrative remedies or to sufficiently demonstrate that the process was unavailable to him, the complaint must be dismissed.

A separate order follows.

_March 13, 2015_____                _____/s/_____
Date                                                         James K. Bredar
                                                                 United States District Judge

---

[2]  Prisoners are permitted to send mail without paying postage if they are indigent and indicate their inability to pay by marking the mail "N/F" for "no funds."